FILED

03/20/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Brief February 12, 2019

## STATE OF TENNESSEE v. JAMES LUCAS GREEN

**Appeal from the Circuit Court for Maury County**
**No. 25195      Stella Hargrove, Judge**

_____

### No. M2018-00683-CCA-R3-CD

_____

A Maury County jury convicted the Defendant, James Lucas Green, for driving under the influence ("DUI"), fifth offense, violation of the implied consent law, and violation of a habitual motor vehicle offender restriction. The trial court imposed an effective four-year sentence to be served at thirty percent. On appeal, the Defendant contends that: (1) the evidence is insufficient to support his conviction for DUI; (2) the trial court improperly overruled his *Batson* challenge; (3) the trial court erred when it ordered consecutive sentencing; and (4) cumulative error entitles him to relief. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and TIMOTHY L. EASTER, JJ., joined.

John M. Schweri, Columbia, Tennessee, for the appellant, James Lucas Green.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Adam Davis and James E. Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant's arrest for DUI. Columbia Police Department Officer Chadwick Howell found the Defendant sitting inside his stopped vehicle on a road, blowing the vehicle's horn. The Defendant smelled of alcohol and slurred his speech. For this offense, a Maury County grand jury indicted the Defendant

for DUI, fifth offense, violation of the implied consent law, and violation of a habitual motor vehicle offender restriction.

## A. Trial

At the Defendant's trial, the following evidence was presented: Officer Howell testified that the police department received a call on June 30, 2016, reporting that a vehicle was driving eastbound in a westbound lane. The 911 operator provided the vehicle's license tag number. Officer Howell responded to the location and found the vehicle, a maroon Toyota Camry with a license tag matching the one provided by the 911 operator, sitting in the middle of the street. The driver, the Defendant, was sitting in the vehicle and "banging" on the horn. Officer Howell approached the Defendant's vehicle and smelled alcohol. The Defendant's responses to Officer Howell's introduction were slow and slurred. The vehicle was running and still in "drive." The Defendant's foot was on the brake. The Defendant complied with the officer's instruction to get out of the vehicle and was stumbling and "looked intoxicated" when he got out. He told Officer Howell that he had consumed a "few beers." The Defendant had to lean on the vehicle to steady himself. Officer Howell administered a field sobriety test, and the Defendant was unable to perform the requested tasks, including the "walk-and-turn" test. The Defendant then told Officer Howell that he was intoxicated. Based on this interaction, Officer Howell arrested the Defendant.

At this point in the proceedings, while the jury went to lunch, a hearing was conducted on the subject of "any *Batson* issues" related to one particular juror whom the State had challenged during voir dire. The State had apparently prosecuted the juror's son in the past, resulting in his convictions for evading arrest and theft of property. The juror's son had also been indicted in the past for drug offenses. The trial court stated that it recognized the juror's son's name. The trial court stated that it had released the juror from service "feeling comfortable it was [for] a race neutral reason under *Batson*."

The Defendant objected to the juror's release because the juror was the only African-American on the potential jury list. The Defendant further objected because another potential juror, who also had a family member previously prosecuted by the State, had not been challenged during voir dire. The State responded that it had struck the African-American juror because her son had a more extensive criminal history and record of convictions and had been prosecuted by the elected District Attorney himself. The State maintained that, because of this history, the juror could not be unbiased. The State further responded that it had not challenged the second juror because he had stated that he could be unbiased despite his family member's history. The State explained that, "just because we struck one juror for having a family member who had past experiences [with the criminal justice system], that in no way, shape, or form should have any bearing

2

on our decisions to keep another juror."

The trial court noted that the potential African-American juror had identified herself as being familiar with the Defendant and that her son had criminal convictions. On this basis, the trial court found that there was a race-neutral reason present for excusing the juror.

Officer Howell then continued his testimony, testifying that his interaction with the Defendant was video recorded, and the video was played for the jury. Officer Howell read to the Defendant the "implied consent" form, asking the Defendant if he would submit a blood sample. The Defendant refused, and Officer Howell noted it on the form. The form was admitted into the record as an exhibit, as was an order declaring the Defendant an habitual motor vehicle offender.

Carrie Richardson testified that she was driving her vehicle on June 30, 2016, when she spotted a vehicle turn into the wrong lane of travel, meaning the vehicle turned into oncoming traffic. Ms. Richardson called 911 immediately and began following the vehicle. Ms. Richardson provided the 911 operator with the vehicle's license tag number. At some point, the vehicle drove into the correct lane and Ms. Richardson continued to follow it. The vehicle pulled into the driveway of a residence, and Ms. Richardson drove away. Ms. Richardson did not clearly see the driver of the car.

Lieutenant Brian Jones testified that he was employed by the Columbia Police Department and that he responded to the scene of the Defendant's stopped vehicle where Officer Howell was already present. Lieutenant Jones observed Officer Howell speaking with the Defendant, and the Defendant getting out of his vehicle. Lieutenant Jones recalled that the Defendant smelled of alcohol and was unsteady on his feet.

Based on this evidence, the jury convicted the Defendant of DUI, violation of the implied consent law, and violation of the habitual motor vehicle order. The parties stipulated that this was the Defendant's fifth DUI offense.

## B. Sentencing

At the subsequent sentencing hearing, the following evidence was presented: the presentence reports and certified copies of the Defendant's four prior convictions for DUI were entered into the record as exhibits. Probation officer Amanda Philyaw testified that she had prepared the presentence report. The Defendant admitted to Ms. Philyaw that he used cocaine, alcohol, and crack weekly. He appeared to be unemployed and relied on government benefits and a legal settlement for money to live. The Defendant indicated that he had received mental health treatment for schizophrenia. The trial court inquired

about the Defendant's age, fifty-eight years old, and confirmed that no mitigating or enhancement factors were found by Ms. Philyaw. Ms. Philyaw stated that the Defendant also had prior convictions for attempted robbery and several violations of probationary sentences. Ms. Philyaw testified that the Defendant's actions during their meeting were consistent with schizophrenia. She confirmed that the Defendant was registered as a sex offender in Washington State.

The trial court stated that the Defendant's entire criminal history totaled sixty-three convictions, seven of them felonies, and several violent offenses. The trial court noted that the Defendant was a repeat DUI offender and had been in the criminal justice system for half of his life. He had received medical and psychiatric treatment in the past and had been given the opportunity to rehabilitate himself and stay out of prison. Based on this, the trial court stated that the Defendant needed to be housed in a criminal justice facility. The trial court stated that the Defendant posed a risk to society if he were granted probation, based on his history of repeatedly driving while intoxicated. The trial court also stated that the Defendant had shown he would not abide by the terms of probation and that less restrictive measures than confinement had been unsuccessfully applied to the Defendant in the past.

The trial court imposed a sentence of two years of incarceration for the DUI conviction, with which the trial court merged the violation of the implied consent law conviction, and imposed a consecutive sentence of two years of incarceration for the violation of the habitual motor vehicle offender restriction.

As to the imposition of consecutive sentences, the trial court considered the required *Wilkerson* factors and stated that the circumstances surrounding the Defendant's offense were aggravated, considering that it was his fifth offense and that he was seen dangerously driving into oncoming traffic. *See State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995). The trial court found that the Defendant was a dangerous offender pursuant to the criteria in *Wilkerson*, in that the consecutive sentences were reasonably related to the severity of the Defendant's offenses and necessary to protect the public. The trial court also applied consecutive sentencing factor (2), that the Defendant's criminal history was extensive, based on his record of sixty-three prior convictions. T.C.A. § 40-35-115(b)(2). It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to support his conviction for DUI; (2) the trial court improperly overruled his *Batson* challenge; (3) the trial court erred when it ordered consecutive sentencing; and (4) cumulative error entitles him to relief.

4

**A. Sufficiency of the Evidence**

The Defendant contends that the evidence is insufficient to support his DUI conviction because no one who testified actually saw the Defendant driving the vehicle. Ms. Richardson testified about a description of the vehicle but never saw the Defendant himself and by the time Officer Howell came into contact with the Defendant, the vehicle was stopped in the roadway. This evidence, the Defendant contends, taken as a whole, leads to the conclusion that no rational trier of fact could have found him guilty of DUI beyond a reasonable doubt. The State responds that the evidence is sufficient from which the jury could have inferred that the Defendant was the driver of the vehicle observed by Ms. Richardson driving the wrong way in a lane of traffic. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). In determining the sufficiency of the evidence, this court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973).

The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their

5

demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant in this case contests the sufficiency of the evidence to support his conviction for DUI. A person commits the offense of DUI when he or she drives or is in physical control of any automobile while "[u]nder the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system. . . ." T.C.A. § 55-10-401 (2016). The statute imposes strict liability without reference to a culpable mental state. *See State v. Turner*, 953 S.W.2d 213, 216 (Tenn. Crim. App. 1996).

The evidence, viewed in the light most favorable to the State, was that the Defendant was found sitting in his car, stopped in the middle of the roadway with the car in gear, blowing the vehicle's horn. The Defendant smelled of alcohol, was unsteady on his feet, and was unable to complete the field sobriety tests. Additionally, a vehicle with the same license tag number and matching a description of the Defendant's was seen in the area driving in the oncoming lane of traffic. This is sufficient evidence from which a jury could conclude that the Defendant was the individual driving the vehicle seen in the wrong lane and from which the jury could infer that the Defendant was intoxicated while he was driving or in physical control of the vehicle. Even without the eyewitness's testimony, the proof that the Defendant was in physical control of the vehicle while intoxicated is sufficient from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of DUI. The Defendant is not entitled to relief.

## B. *Batson* Challenge

The Defendant next contends that the trial court erred when it overruled the Defendant's objection to the exclusion of a potential juror as being violative of *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that peremptory challenges may not be

exercised in a discriminatory manner). The Defendant argues that unlawful discrimination existed because the State did not challenge another Caucasian potential juror whose family member also had been prosecuted by the State. The State responds that the Defendant has failed to establish a prima-facie case of purposeful discrimination and that the State provided a non-discriminatory reason for its use of a challenge for this particular juror. We agree with the State.

The United States Supreme Court has consistently recognized that racially-based juror exclusions affect and injure the integrity of the justice system. *See Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 902 (Tenn. 1996) (citation omitted). Accordingly, in *Batson*, the Court held that the equal protection clause of the Fourteenth Amendment prevents a prosecutor from using peremptory strikes to challenge potential jurors "solely on account of their race." *Batson*, 476 U.S. at 89.

*Batson* provides a three step process for the evaluation of racial discrimination claims in jury selection. First, the defendant must make a prima facie showing that the prosecutor exercised peremptory challenges on the basis of race. *Purkett v. Elem*, 514 U.S. 765, 767 (1995); *Batson*, 476 U.S. at 96-98. If the defendant satisfies this initial burden, the burden then shifts to the prosecutor to articulate a race-neutral explanation for excluding the venire member in question. *Purkett*, 514 U.S. at 767; *Batson*, 476 U.S. at 97. Third, the trial court must determine whether the defendant met his burden of proving purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 359 (1993); *Batson*, 476 U.S. at 98. In making its determination of whether the use of a peremptory challenge was discriminatory, the trial court must articulate specific reasons for each of its factual findings. *Woodson*, 916 S.W.2d at 906. The trial court's findings are imperative because rarely will a trial record alone provide a legitimate basis from which to substitute an appellate court's opinion for that of the trial court. *Id.* at 916. Thus, on appeal, the trial court's finding that the State excused a venire member for race-neutral reasons will not be reversed unless it is clearly erroneous. *Id.*

In the case under submission, the trial court asked the State to provide its race-neutral reason for exclusion. As such, we assume that the court implicitly found that the Defendant satisfied the first prong of *Batson* and then proceeded with an analysis of the second and third prongs of *Batson*. The trial court found that the potential juror was challenged for a race-neutral reason, specifically her son's prior prosecution by the State. The trial court noted that this juror's son had a more "extensive" criminal history than another juror who had a family member who had been prosecuted but whom the State had not challenged. On this basis, the trial court stated that there was not a *Batson* issue present. Although a transcript of the voir dire is not included in the record and the trial court's findings are relatively sparse, we find the record sufficient for us to undertake our review.

7

"In reviewing the prosecutor's explanations, we acknowledge that 'many of the judgments made by counsel in picking a jury are purely intuitive and based upon inarticulable factors.'" *State v. Carroll*, 34 S.W.3d 317, 320 (Tenn. Crim. App. 2000) (quoting *United States v. Bently-Smith*, 2 F.3d 1368, 1374 (5th Cir. 1993)). Accordingly, while subjective considerations may not be susceptible to objective rebuttal or verification, they are permitted because of the inherent nature of peremptory challenges, with the understanding that ultimate *Batson* findings will largely turn on the evaluation of the credibility of counsel's explanations. *Id.* Neutral explanations that are based on subjective assessments, such as the jurors' demeanor, must be carefully scrutinized. *Id.* At this step, the crucial inquiry is the facial validity of the prosecutor's explanation. *Hernandez*, 500 U.S. at 360. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.* What *Batson* means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. *Purkett*, 514 U.S. at 769 (citations omitted).

With these considerations in mind, we conclude that the basis for the State's use of its peremptory challenges against the African-American potential juror, who was ultimately excluded from the venire, was sufficiently race-neutral to dispel any indicia of purposeful discrimination. The State explained that the potential juror's son's extensive criminal history of convictions and indicted offenses would lead the juror to be biased. It further said that the sitting elected district attorney general had prosecuted her son. We conclude that the State articulated a valid, race-neutral reason for challenging this juror, and the trial court's decision that the State's reasons were legitimate and non-discriminatory is not clearly erroneous. The Defendant is not entitled to relief.

### C. Consecutive Sentencing

Lastly, the Defendant contends that the trial court erred when it imposed consecutive sentences. He argues that the circumstances of the offense were not aggravated and that confinement was not necessary to protect the public from the Defendant's criminal behavior. He further argues that a four-year sentence does not reasonably relate to the severity of his offenses. The State responds that the trial court appropriately considered the required consecutive sentencing factors and properly ordered consecutive sentencing. We agree with the State.

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the statutory criteria by a preponderance of the evidence. As it relates to this case, the trial court found the following criteria applicable:

8

(2) The defendant is an offender whose record of criminal activity is extensive;

. . . .

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

T.C.A. § 40-35-115(2) and (4). These criteria are stated in the alternative; therefore, only one need exist to support the imposition of consecutive sentencing. *See id.*; *State v. Denise Dianne Brannigan*, No. E2011-00098-CCA-R3-CD, 2012 WL 2131111, at *19 (Tenn. Crim. App., at Knoxville, June 13, 2012), *no Tenn. R. App. P. 11 application filed*. The imposition of consecutive sentencing, however, is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed [.]" T.C.A. § 40-35-103(2), (4).

We review a trial court's decision to impose consecutive sentences for an abuse of discretion with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 860 (Tenn. 2013). Our review of the record reflects that the trial court properly addressed the *Wilkerson* factors in applying the dangerous offender criteria and the record supports that the sentence imposed is necessary to protect the public and reasonably relates to the severity of the offense, this being the Defendant's fifth DUI offense. *See Wilkerson*, 905 S.W.2d at 938-39. Moreover, the trial court properly applied consecutive sentencing factor (2), which is sufficient to support consecutive sentencing. Accordingly, we conclude that the sentence is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles of the sentencing statute. The Defendant is not entitled to relief as to this issue.

### D. Cumulative Error

Lastly, the Defendant contends that the cumulative effect of the errors in this case deprived him of a fair trial. Having considered each of the Defendant's issues on appeal and concluding that the trial court did not err, we need not consider the cumulative effect of the alleged errors. *State v. Hester*, 324 S.W.3d 1, 77 (Tenn. 2010) ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed.").

### III. Conclusion

9

In accordance with the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE